In The United States District Court for The Middle District of Pennsylvania

3:18cv1381

Wesley Pollard Sr.
vs.
Tammy Ferguson, et. Al

Civil Action No.

FILED
SCRANTON
JUL 1 2 2018
PER ______
DEPUTY CLERK

Jurisdiction & Venue

This is a civil Action Authorized by 42 U.S.C. Section 1983 to Redress the deprivation, under color of State law, of right secured by the Constitution of the United State. This Civil Complaint, Is a Tort 1983 Authorized by 28 U.S.C. Section 1346

A). The Middle District Court; is and appropriate venue under 28 U.S.C. Section 1391 (B)(2) because it is where the events giving rise to this claim occurred.

B). Plaintiff; Pollard, is and has at all times mentioned herein a "Prisoner" of the "State of Pennsylvania" in custody of the "Pennsylvania Department of Corrections". He is currently confined in S.C.I. Benner, in Bellefonte, Pennsylvania.

At all time's mentioned in this complaint each "Defendant" acted under the color of State law

Monroe v. Pape, 365 U.S. 167 (1961)
Monell v. New York City Dept. of Social Services, 436 US. 658

Allegation of facts constituting a deprivation under color of State Authority of a Right guaranteed by the Fourteenth Amendment satisfies to that extent the requirement of Rev Stat § 1979 (42 USC 1983), giving Right of Action against a person who under color of State law, custom or usage, subjects another to the deprivation of any Rights privileges, or immunities secured by the federal Constitution.

There can be no doubt at least since Ex Parte Virginia, 100 U.S. 399, 346, 347, 25 L Ed 676, 679, that Congress has the power to enforce provisions of the Fourteenth Amendment (against those who in Authority under color of State law).

A "Plaintiff," pleading obligation is to set forth a short and plain statement of the claim which gives the "Defendant" fair Notice of what the claim is and the grounds upon which it rest

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed 2d 929 (2007) quoting; Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2L Ed. 2d 80 (1957)

Plaintiff; has exhaust Administrative Remedies 42 U.S.C. § 1997(e)(A) – Inmate Grievance Policy; DC-ADM 804 as required. Exhibit B.

Administrative remedies must be proper & in accordance with applicable regulations and policies

Toney v. Bledsoe 427 Fed. Appx 74 (3d Cir. 2011)

This is A Civil Right Action filed by Wesley Pollard SR., A State Prisoner for damages under 42 U.S.C. § 1983, for A violation of the "First, Fourteeth And the Eighth Amendment to the Unite State Constitution.

1). The Court has jurisdiction over the Plaintiff, claim of violation of federal constitution Right, under 42 U.S.C. § 1331 (1) AN 1343 constitutional Rights

2). The Court has supplemental jurisdiction over the Plaintiff's State law Tort Claims under 28 U.S.C. § 1367

3). The Plaintiff; Wesley Pollard, is incarcerated At "Benner Correctional Unite," (S.C.I. Benner) during the events discribed in this complaint.

4). Defendant, Tammy Ferguson, is the Warden And is in charge of the over All operation At S.C.I. Benner. . . At the time of the incident, is being sued in individual & official capacity

5). Defendant, Timothy Graham, is the Major (of Guard's) The Major supervises All facility "Correction Officer's" the "Unite Management Team", Assigned to each housing unite, is being sued in individual & official capacity

6). Defendant; Lieutenant Speck, is the lieutenant of R.H.U. (Hold) on the AM-shift. . . At the time of the incident. He is being sued in his individual capacity.

7). Defendant; Sergeant Gerber, is the Sergeant for the R.H.U. (Hold) on the AM shift. . . At the time of the incident. He is being sued in his individual capacity.

8). Defendant; Sergeant Kohn, is the Sergeant for the R.H.U. (Hold) on the PM shift. . . At the time of the incident. He is being sued in his individual capacity.

9). Defendant's; Smith, Houser, Snyder, Gibson an Cowfer are all Correctional officers employed at S.C.I. Benner on AM shift . . . At the time of the incident. They are being sued in their individual capacity

10). Defendant's; Robinson, Fishbaine, Breeden an Anderson are all Correctional officer's employed At S.C.I. Benner on PM shift. They are being sued in their individual capacity

11). Defendant; Grassmeyer, is the training Lieutenant At S.C.I. Benner on AM shift. . . At the time of the incident. He is being sued in his individual capacity an official capacity.

12). Defendant; Merva, is the Training Sergeant At S.C.I. Benner on PM shift. . . At the time of the incident. He is being sued in his individual capacity and Official Capacity

13). All the "Defendants" have Acted, and continue to Act under color of State law At All times relevant to this complaint.

When A "Prisoner" pleading regarding the conditions of his confinement therefore, are sufficient where they meet a objective And a subjective standard; that is, where they Allege that the deprivation is "sufficiently serious" such that the deprivation denied the minimal civilized measure of life's necessities, And Also Allege that the defendants, had a sufficiently culpable state of mind Amounting to At least "Deliberate Indifference"

Dawes v. Walker, 239 F. 3d 489, 493-94 (2d Cir. 2001) (Eighth Amendment) see Also, Weyant 101 F. 3d At 856 (fourteenth Amendment.

# Facts

1). On August 10, 2016; Plaintiff, Pollard was put in the R.H.U, for Refusing to double cell with another "Inmate. Exhibit A

2). At all time's relevant to this case; Plaintiff, Pollard was lodge in the hold (R.H.U.), At S.C.I. Benner

3). From the inception of Plaintiff refusal, to double cell, Plaintiff remain in the R.H.U., through September 18, 2017. See Exhibit B

4). On the Night of August 10, 2017; "Inmate M. Swanson, dismantle and trash his cell J-B-147, breaking the light switch and the water faucet off, smearing blood and body fluid all on the wall's. See Exhibit C of Misconduction Report

5). The same Night August 10, 2017; upon hearing the banging C.O. Kerschner, went to cell J-B-147; to find the "Inmate" dismantling the cell

6.) Upon talking to "Inmate M. Swanson", C.O. Kerschner, left and return with Sergeant Kohn and C.O. Robinson.

7). After returning C.O. Kerschner, turn the water off, in cell J.B.147

8). Officer's, C.O. Kerschner, Sergeant Kohn and C.O. Robinson attempted to move "Inmate Swanson" from his cell J.B.147, because the cell was in unsanitary living condition, as well as there was no function light's in the cell or water.

9). Inmate M. Swanson, refused to move, Sergeant Kohn, C.O. Robinson and C.O. Kerschner after ten minute's of argument between the C.O's and Inmate Swanson, the C.O.'s, couldn't convince Swanson, to cuff up so they could move him.

10). Therefore, Sergeant Kohn, C.O. Robinson and C.O. Kerschner, left Inmate M. Swanson in Cell J.B.147.

11). See: Exhibit C of cell placement upon receiving misconduction report.

12). On August 11, 2017; 7:30 AM early morning, Pollard was out in the yard for recreation, the AM Sergeant, Sergeant Gerber & Lieutenant Speck, moved "Inmate M. Swanson" out of his cell J.B.147 and placing him in the block law library cage.

13). Upon returing in from recreation, Pollard was informed that, Sergeant Gerber & lieutenant Speck; was on the cell block conspiring and joking about how moving Pollard in J. B. 147 will force Pollard to double cell with another Inmate.

14). Shortly after Pollard, being placed in his cell J. B. 155; Pollard was approached at his cell, by Sergeant Gerber and told he was moving him to J. B. 147.

15). Pollard, informed "Sergeant Gerber" of the prior episode of the night before, August 10, 2017

16). With, "Inmate M. Sawnson" dismantling the cell and smearing blood and feces all in the cell.

17). Sergeant Gerber, replyed, maybe this will teach you a lesson for keep refusing to take a cellie; after

18). Plaintiff; Pollard refused to move, but was threaten if didnt, he use alternativ measure (indicating he would use mace spray to remove Pollard.)

19). August 11, 2017; After being retaliated against and threaten Sergeant Gerber, order C.O. Gibson to move Pollard, into Cell J. B. 147 and to put Inmate M. Swanson in Cell J. B. 155, Pollard's cell.

20). Upon being moved in Cell J. B. 147; the cell wasn't properly sanitize from blood, body fluid and feces, that Inmate Swanson had smeared & spatter all around in the Cell J. B. 147

21). The morning of August 11, 2017; prior to being placed in cell J-B-147; maintance department came to fix's the lights and light switch. At this time maintance, told Sergeant Gerber; the lights couldn't be repaired. (That they needed to order a switch part) Also another

22). Maintance Department, was at the cell J. B. 147; working on the sink faucet. Upon the faucet being repaired, Sergeant Gerber; instructed the maintance personal to leave the water shut off.

23). Sat., August 12, 2017, the day after, being moved in Cell J.B.147; A normal cleaning day for the R.H.U. Plaintiff signed up for cell cleaning... but mysteriously Plaintiff, cell wasn't put on the list by C.O. Gibson

24). From the morning of August 11, 2017 untill August 31, 2017; 20 days Plaintiff, Pollard lived in Cell J.B.147 without any operational or functioning lights an from,

25). August 11, 2017 untill August 14, 2017; Plaintiff lived in cell J.B.147, 4 days without water to the cell or any type of cleaning material to clean the blood, urine & feces-covered cell

26). On Wed., August 30, 2017; the maintence department came to fix's the light's & light switch in the cell J.B.147

27). The same day August 30, 2017; Plaintiff, Pollard was approached by Sergeant Gerber and asked would he like to move, to another cell.

28). From the inception of being moved in cell J.B.147, Correctional Officer's...

| | | | |
|---|---|---|---|
| C.O. Smith | 6·2, shift | Sergeant Kohn | 2·10, shift |
| C.O. Houser | 6·2, shift | C.O. Robinson | 2·10, shift |
| C.O. Snyder | 6·2, shift | C.O. Fishbaine | 2·10, shift |
| C.O. Gibson | 6·2, shift | C.O. Breeden | 2·10, shift |
| C.O. Cowter | 6·2, shift | C.O. Anderson | 2·10, shift |

29). All failure to intervene in the malfeasance that there commading officer's; Sergeant Gerber's lieutenant Speck, "Adverse Action" was obviously inflicting to cause harm to me, by trying to enforce me to double cell with anothe inmate.

At All time's each "Defendant" acted under color of state law.

30). The preceding paragraphs of this complaint are incorporated herein reference

Department of Corrections
Code of Ethics

Page 3 (B-1) read's . . . each employee in the correctional system is expected to subscribe to the principle that somethen positive can be done for each inmate. This principle is to be applied without exception.

Page 4 (B-14) Reads... Employees will promptly report to their supervisor any information which comes to their attention and indicates violation of the law, Rules, and/or Regulations of the "Department Of Corrections by either an employee or an inmate, and will maintain reasonable familiarity with the provisions of such directives.

All "Defendants" are "Prison Officials" they violate the Eighth Amendment, when they acted with "Deliberate Indifference" to prison condition that exposes "Plaintiff" to an unsanitary living condition and;

They violated a provision of the "Civil Service Act Code" ... Governor's code of conduct #1980-18 or the law of the Commonwealth, that they sworn to uphold.

31). The preceding paragraphs of this complaint are incorporated herein by reference to; Plaintiff Eighth Amendment Claim.

The Eighth Amendment, to the United States Constitution guarantees that no prisoner shall be subjected to cruel and unusual punishment, the

Constitutional prohibition against cruel unusual punishment not only prohibits certain kind of physical punishment such as torture, but it embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency. Thus, the "Eighth Amendment" requirs that a jail official, under the circumstances as I shall define them for you must not be "Deliberately Indifferent" to conditions, that pose and unreasonable risk to "Plaintiff's" health and safety.

32). On the morning of August 11, 2017; Lieutenant Speck and Sergeant Gerber, intention and state of mind, motive of acting was to force Plaintiff Pollard; to double cell, by moving Plaintiff in a cell that had no lights, smeared with blood and body fluid.

There action was malice, cruel and intented to dehumanize and to force Plaintiff to double cell, by retaliating against him for not doubling cell'ing with another inmate and moving Plaintiff in a cell environment that was unsanitary and degrading.

Correction Offical's Knew of the condition of cell J-B-147, prior to moving Plaintiff in it. Officials, on 2-10 shift had to file a incident Report sheet. So that the relieving "Sergeant, lieutenant" and there "Subordinates on the next shift are awear of previous circumstances.

Under: Wilson v. Seiter 501 U.S. 294 (1991). . . . offical knew of the condition and not respond; (to help) and resolve the current or prior situation. . . . instead they use the opportunity to retaliate and violate, Plaintiff "First Amendment" and continue violating, Plaintiff "Eighth Amendment.

Direct evidence of retaliatory motive is not required where circumstantial evidence is sufficiently compelling, Bennett v. Goord, 343 F.3d 133, 138-39 (2d Cir. 2003) and,

These facts clearly establish the First & Eighth Amendment violation. Among the unnecessary and wanton inflictions of pain constituting cruel and unusual punishment are those that are totally without penological justification

Supreme Court, has held that unsafe conditions that "pose and unreasonable risk of serious damage to (a prisons) future

health, violate the "Eighth Amendment" even if the damage has not yet occurred.

Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475 (1993) (Examples cited by the Court, included exposure to the risk of infectious disease, human waste, unsafe drinking water, exposed wiring, deficient firefighting measures.

At all times each "Defendant" acted under color of State law.

33). As one court observed, we see no reason why one inmate should have to suffer cruel and unusual punishment because of the activities of some disruptive ones . . . The prison administration must bear the ultimate responsibility for cell block condition.

Blake v. Hall 668 F. 2d 52, 57-58 (1st Cir. 1981) see also McCord v. Maggio, 927 F. 2d 844, 847 (5th Cir 1991)

34). In the present situation, the inmate M. Swanson, that occupied the cell had dismantle and trashed the cell, see Exhibit C of Misconduction Report for the night of August 10, 2017

35). The same night, August 10, 2017; C. O. Kershner tore off water to J. B. 147 — there was no faucet, sink was destroy, no operation light's or light switch, cell wall's was cover/smeared with feces, blood an urine.

36). The morning of August 11, 2017, at R.H.U. yard return in, Approximate 8:30 AM; Plaintiff was force to move in cell J. B. 147. . . without the cell being proper sanitize.

37). Plaintiff being exposure to feces, blood an urine can constituted a serious risk to Plaintiff health and safety an satisfy the objective component (of the Eighth Amendment). . . Exposure to human waste of other's carries a significant risk of contracting infectious diseases such as Hepatitis A, shigella and others.

The Eighth Amendment ban on inflicting cruel & unusual punishment, made applicable to the State by the Fourteenth Amendment.

Estelle v. Gamble, 429 U. S. 97, 102, 50 L. Ed 2d 251, 97 S. Ct. 285

Fourteeth Amendment "Due Process Right" concerning the conditions of confinement are at least as great as the "Eighth Amendment" protections available to a convicted prisoner.

Mitchell v. Horn, 318 F. 3d 523 (3d Cir. 2003)
Welch v. Bartlett 196 F. 3d 389, 394 (2d Cir. 1999)

38). Plaintiff being force to confine in a cell that is covered with feces state a claim (Plaintiff was confine 4 days in these condition). . . . A prisoner must be provided with "shelter" which does not cause his degeneration or threaten his mental and physical well being

Ramos v. Lamm, 639 F. 2d 559 (10th Cir. 1980)

Gaston v. Coughlin, 249 F. 3d at 166 (we are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowing to allow and area to remain filled with sewage and excrement for days on end.) McBride v. Deer 240 F. 3d 1287, 1291-92 (10th Cir. 2001) and cases cited, Johnson v. Lewis, 217 F. 3d 726, 732-33 (9th Cir. 200)

Defendant's knew of the condition of the cell, from the:

1) Work order for the cell destruction
2). They make daily rounds, consecutive every 15-20 minute's
3). Plaintiff, constantly complaining about cleaning it
4). Doing security check

Vinning-El v. Long, 482 F. 3d 923, 924-25 (7th Cir. 2007) (holding that guard's working in the area knew about grossly filthy cell condition.

McBride v. Deer, 240 F. 3d 1287, 1291-92 (2001). . . three days in a feces-covered cell without cleaning material state's a constitutional claim

39). Monroe v. Pape, 365 U. S. 167 (1961). . . it has been decided that State Goverment Official's can be held accountable under Section 1983 . . . each

Defendant, are "Prison Officials" they violated the Eighth Amendment when they acted with "Deliberate Inddifference" to prison condition that exposes "Plaintiff" to an unsanitary living condition

Reed v. McBride, 178 F. 3d 849, 854 (1999) "A prison officials Knowledge of prison condition learned from an inmate communication can. . . . Require the officer to exercise his Authority (civility duty) to rectify the offending condition. . . quoting — Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996); Gentry v. Duckworth, 65 F 3d 555, 561 (1995)

Defendant's,

C.O. Smith | Sergeant Kohn
C.O. Houser | C.O. Robinson
C.O. Snyder | C.O. Fishbaine
C.O. Gibson | C.O. Breeden
C.O. Cowfer | C.O. Anderson

None of the "Defendant's" qualify from qualified or sovereign immunity. Their Actions were their own free will and can-not be considered an Act of goverment or state. They maybe employed by the "State" but their Action were not ordered by the "State" or any "State Goverment".

Dugas v. Jefferson County, 931 F. Supp. 1315, 1319 (1996) ... It appears long established that public officers are not shielded from "Civil liability" for illegal acts simply because they acted upon direction of policy-making superiors; Aff'd, 127 F. 3d 33 (5th Cir 1997)

40). Correction Official; Officer's, Timothy Graham (Major of guard's)... he, supervises of facility correction officer's.

Correction Official; Officer's, lieutenant Grassmeyer, training lieutenant

Correction Official; Officer's, Sergeant Merva, training Sergeant

Warden, Tammy Ferguson, over seer of all job duty and operation of staff an training

Kitt v. Ferguson, 750 F. Supp. 1014, 1019 (D. Neb 1990) (A superintendent or warden, with policy-making authority can be held liable for operating a prison with unsanitary and inhumane conditions)... 950 F. 2d. 725 (8th Cir. 1991)

In determining whether an act occurred within the scope of employment or if the Warden, Major, Lieutenant, Sergeant and there subordinates, can be held in the constitutional torts, of their supervisors, Pennsylvania Superior Court has adopted the standard set forth in the Restatement (Second) of Agency § 228. See; Bowman v. Reilly, Civ. A. No. 09-1322, 2009 U.S. Dist. Lexis 48505, *3 (E.D. Pa. June 10, 2009) citing: Butler v. Flo-Ron Vending Co., 383 Pa. Super. 633, 557 A.2d 730, 736 (1989)

Actions that were not authorized by the employer may still be within the scope of employment if they are clearly incidental to the master's business. See: Shuman Estate v. Weber, 276 Pa. Super. 209, 419 A. 2d 169, 173 (1980)

Plaintiff. Pollard, respectfully pray that this court grant a declaration that the act an ommissions described herein violated his right under the Constitution an law of the United State and . . .

Award compensatory damages in the amount of $50,000 severally an jointly against . . .

Warden, Tammy Ferguson; Major, Timothy Graham Training Officer, Lieutenant Grassmeyer; Training Officer Merva Lieutenant Speck; Sergeant Gerber; Sergeant Kohn — for

Negligence (carelessness) Malice (intent to cause harm) breached (failure in) their duty to train an their implemeting corporal or unusual punishment or treatment that exposed Plaintiff in and unsanitary an hazadous living condition for (4) four days. With out care of Plaintiff life, health or the mental harm it would cause, Also

Award compensatory damages in the amount $20,000 severally against . . .

C.O. Smith C.O. Gibson C.O. Fishbaine
C.O. Houser C.O. Cowfer C.O. Breeden
C.O. Snyder C.O. Robinson C.O. Anderson — for

Failing to intervene to prevent the malfeasance that were being done maliciously an sadistically an constituted cruel an unusual punishment in violation of the Eighth Amendment & First Amendment of the United States Constitution

Award punitive damages in the following amount against each "Defendant" $10,000

Grant such other relief this court may appear that Plaintiff is entitled

Exhibit A

JB 155-1

DC-141, Part 4

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**

☐ **30 Day Review**

☒ **90 Day Review**

| DC Number | Name | Facility | Date of Review | # of Review |
|---|---|---|---|---|
| KT7046 | POLLARD | BENNER | 7/18/17 | 4 |

**Current Status:** ☐ **Administrative Custody** ☒ **Disciplinary Custody**

Date placed in Security Level 5 Housing: 8/10/16

Time Served in DC: 330 AC: 13

Total Continuous Security Level 5 Housing Time Served: 343

Date of Last Psychological Assessment: 1/2/13

**Initial Reason for Confinement:** Inmate serving DC time for refusing to obey orders.

**Program Review Committee Progress Report and Specific Rationale for Continued Placement or for Transfer:**

Inmate Pollard was seen out of cell by PRC. Inmate Pollard reports that he is not refusing to leave the RHU in general, he is refusing to leave the RHU if he has to take a cellmate. He stated that he was a Z Code prior to his arrival at SCI-BEN; however, his Z Code was removed after he got here. Inmate Pollard stated that his Unit Team has advised him that he has been reviewed for a Z Code on a few occasions; however, it has been denied. Inmate Pollard had no questions or concerns for PRC. Discontinue DC status on DC max date of 07/18/17 and release to general population as bed space is available.

**Recommendation:**
☐ Continue DC ☐ Move DC to AC ☐ Continue AC ☐ Transfer ☒ Release to Population

| Names of Program Review Committee Members | Signature | Date |
|---|---|---|
| Bobbi Jo Salamon, DSCS; Daniel Myers, DSFM | [signature] | 7/18/17 |
| Jennifer Rossman, CCPM; Timothy Graham, Major | [signature] | 7/18/17 |
| Christopher Danison, UM; Chad Miner, CAM | C. Conn [signature] | 7/18/17 |

**Facility Manager's Comments and recommendation for Continued Placement, Transfer, or Release to Population:**

☐ Continue DC ☐ Move DC to AC ☐ Continue AC ☐ Transfer ☒ Release to Population

7-28-17
Date

[signature]
Facility Manager's Signature

 Counselor - Casner, J MH; C

Form DC-141 Part 1
Rev 8/05

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

B 997988

☒ MISCONDUCT REPORT ☐ OTHER ☐ DC-ADM 801 INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| LM2494 | Swanson, Mason | SCI BEN | 13:20 | 8-10-17 | 8-10-17 |

| Quarters | Place of Incident |
|---|---|
| JB 147 | JB 147 |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** Class one Charge number 35, "refusing to obey an order." Class one charge number 38 "Destroying, altering, tampering with, or damaging property."

**STAFF MEMBER'S VERSION** On the above date and approximate time I, officer J. Kerschner, heard a loud banging noise coming from JB 147. I approached the cell and observed the occupant, inmate Mason Swanson (LM2494), banging the faucet off of his sink against the door. I ordered him to stop which he refused. A few moments later he called me over to the cell and surrendered the faucet to me through the wicket.

**IMMEDIATE ACTION TAKEN AND REASON** Inmate informed to remain present housing status (SLS IIU) pending formal hearing by H/X due to nature of offense.

**PRE-HEARING CONFINEMENT**

| | IF YES | |
|---|---|---|
| ☐ YES | TIME | DATE |
| ☐ NO | SLS IIU Inmate | |

**FORMS GIVEN TO INMATE**
☒ REQUEST FOR WITNESSES AND REPRESENTATION ☒ INMATE'S VERSION

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| J. Kerschner COT KERSCHNER | [signature] | DATE 8-10-17 TIME 24 HOUR BASE 2035 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | | Signature of Person Serving Notice |
|---|---|---|---|---|
| DATE | TIME | | | |
| 8-11-17 | 0800 | ☒ CLASS 1 | ☐ CLASS 2 | [signature] J. Baker |

**Notice To Inmate**

**You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say shall be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you shall be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have shall be revoked.**

WHITE — DC-15 YELLOW — Inmate PINK — Reporting Staff Member GOLDENROD — Deputy Superintendent Facility Management

**INITIAL REVIEW RESPONSE**
SCI Benner Township
301 Institution Drive, Bellefonte, PA 16823

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows

| | | | |
|---|---|---|---|
| **Inmate Name:** | Pollard, Wesley | **Inmate Number:** | KT7046 |
| **Facility:** | SCI Benner Township | **Unit Location:** | J-B-1047-01 |
| **Grievance #:** | 691640 | **Grievance Date:** | 08-15-2017 |

***Publication (if applicable):***

**Decision:**
☐ **Uphold Inmate**
☒ **Grievance Denied**
☐ **Uphold in part/Denied in part**

*It is the decision of this grievance officer to uphold, deny* ***or uphold in part/deny in part*** *the inmate's initial grievance. This response will include a brief rationale, summarize the conclusion, any action taken to resolve the issue(s) raised in the grievance and, relief sought.*

**Response:** *Frivolous* x

Inmate Pollard, I have been assigned to investigate your grievance in which you claim staff have violated your Eighth Amendment right of cruel and unusual punishment. Your claims are based on your assigned cell not having working water and lights.

On August 11, 2017, the inmate housed at JB-147 cell was due for his 90 day move and you were within 4 days of also being due for the required 90 day move. Therefore, the logical move was to switch your cell with the other inmate due for move. Your grievance does accurately depict that the inmate previously housed in JB-147 cell caused damage to the light switch, sink and toilet. However, this damage was repaired and the water restored in a reasonable amount of time.

Your claim of the lights not working is also accurate, in part. The in-cell light switch was not able to be immediately fixed due to the availability of the parts to repair it. I advised you and L-5 Housing Unit staff that it was appropriate to utilize your intercom to have staff remotely operate your lights both on and off as you need. This direction was clearly due to the population of the unit did not allow us to move you to an available cell coupled with your own admission to refusing to be double celled.

As of this date, both your water and lights are functioning properly. You were afforded opportunities to move and even after your refusal to do so you were accommodated by staff remotely operating your lights until the maintenance department repaired the in-cell switch.

Your grievance is considered to be frivolous in nature and lacks arguable facts. The grievance and any relief sought are denied.

| | |
|---|---|
| **Signature:** | [signature] Lt. Speck |
| **Title:** | Corrections Officer 3 |
| **Date:** | 08-30-2017 |

cc: Facility Grievance Coordinator
DC-15
File

ENTERED

Exhibit B

**Facility Manager's Appeal Response**
**SCI Benner Township**
**301 Institution Drive**
Bellefonte, PA 16823

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

| | | | |
|---|---|---|---|
| **Inmate Name:** | Pollard, Wesley | **Inmate Number:** | KT7046 |
| **Facility:** | SCI Benner Township | **Unit Location:** | D-B-2026-01 |
| **Grievance #:** | 691640 | | |

***Publication (If applicable):***

**Decision:** ☒ **Uphold Response (UR)** ☐ **Uphold in part/Deny in part**
☐ **Uphold Inmate (UI)**
☐ **Dismiss/Dismiss Untimely**

*It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.*

**Response:** *Frivolous*

I have reviewed your Official Inmate Grievance, Initial Grievance Response, Grievance Appeal, and facts surrounding your complaint.

I have investigated the issues in which you claim within your Initial Grievance and Grievance Appeal pertaining to you being retaliated against and moved to cell J-B-1047. You say that Lt. Speck and Sgt. Gerber knew the conditions of this cell as they both knew who lived in this cell previously. You go on to say that the night before your move, Inmate Swanson destroyed this cell and the next day, they moved you into this cell which was trashed and covered in blood/feces. You state that Sgt. Gerber told you that they were teaching you a lesson for not taking a cellmate. You state that this is retaliation and a violation of your 8th Amendment Right. You state to deny your grievance by saying that you were do for your 90 day move does not justify your violation. You say that you were moved from a clean cell to a cell that was destroyed. You state that the water faucet was knocked off along with the light switch and feces/blood were all over the walls. You do not request any relief.

In investigating the issues that you claim within this Grievance Appeal, I have found that there is nothing more to add to the Initial Grievance Response that was provided to you by the Grievance Officer.

In speaking with Sgt. Gerber, you and Inmate Swanson were due for a 90 day move and the logical move was to switch your cell and Inmate Swanson's cell. I have been advised that although there was damage done to the cell you were being moved into, all repairs were completed and the water was restored with the exception of your light switch. The light switch in your cell was unable to be fixed immediately because there were no parts available. The light in your cell was able to be controlled from the unit bubble area. You were awarded the opportunity to be housed with someone else but you refused. In speaking with Sgt. Gerber, he stated that your cell was cleaned prior to you being moved into it.

Based on the information obtained, I do not see where any retaliation or a violation to your 8th Amendment Right has occurred.

The Initial Grievance Response is upheld.

| **Signature:** | [signature] |
|---|---|
| **Title:** | Facility Manager |
| **Date:** | 10/4/17 |

cc: DC-15
File

Exhibit B

RECEIVED SEP 11 2017

**SCI**
**INMATE APPEAL TO FACILITY MANAGER GRIEVANCE**

| Inmate Number | NAME | HOUSING UNIT | DATE | GRIEVANCE# |
|---|---|---|---|---|
| KT-7046 | Wesley M. Pollard Sr. | J-B-147 | 9-8-2017 | 691640 |

I received my initial response from the Grievance Office/Coordinator on September 5, 2017 and have the following appeal issues.

**Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.**

**Please provide a BRIEF (no longer than two pages) appeal statement.**

The relevant fact's to this Appeal, is that the malfeasance of the investigation is a injustice first and for-most. Lieutenant Speck, is one of the main cooperate of this "8th Amendment Violation". On the fact of him knowing, he is and then he boldly take position to so call investigate the matter. Show's the wrongful intend of his action on the morning of August 11, 2017; when him & Sergeant Gerber conspired together to move me (Pollard-KT-7046) into cell-J-B-147, on a retaliation to try to force me to take a cellie. Lieutenant Speck & Sergeant Gerber, knew of the condition of the cell, as well as they both knew how barbarous the occupant was that live in cell-J-B-147.

The night of August 10, 2017; time 13:20 — Inmate Swanso #LM-2494, destroyed cell-J-B-147; breaking the water faucet off, knocking the light switch off off and smear blood & feces on all the walls. The C.O. Kerschner whom heard all the banging went to the cell to find him still banging... and said ____ then left of the block and approximate five minute's came back with, Sergeant Kohn & C.O. Robinson. They tryed to move "Swanson" out of the cell, but he refused so they left him in the cell. The next morning August 11, 2017; time 9:00. Upon coming in from the yard, I kept hearing someone shouting to me as I'm coming in on the block. Telling me, don't let them move you in my cell, I've trashed it and I smeared feces on all the wall's. At this time, Sergeant Gerber; approach me & told me, he was moving me. I asked him where, he said into J.B-147; I told him what had expired the night before and what "Swanson" had just told me. He said, so what, maybe this will teach you a lesson by refusing to double up. There after he directed C.O. Gibson and another officer to move me to J.B-147

**INMATE SIGNATURE:** Wesley M. Pollard Sr.

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 2 – Appeals*
Issued: 1/26/2016
Effective: 2/16/2016

*Attachment 2-A*

Exhibit B



This relaliation is cruel & unusual punishment, it violates my 8th Amendment; by putting me in a known filthy inhumane and unsanitary cell. To deny my "Grievance" by saying that we both was schedule for a 90 day move within days of each other, still dont justify the violation of my 8th Amendment Right. Both offical, Sergeant Gerber & Lieutenant Speck intention was to retaliate against me, because of the fact I want double cell with anyone. They moved me out of a clean cell, to reward the individual that just destroyed his cell, breaking the water faucet off, knocking the light switch off and smearing feces and blood on all the walls. The "Grievance" denial stated that I was given the opportunity to move and the staff could operate the lights if I needed them. I'm not going to reply on that, because that answer the violation question and the misfeasance of Lieutenant Speck & Sergeant Gerber action. I'm asking that this issue be, investigated again... by someone whom isnt a cooperate.

I'm also planning on filing a "Civil Suit" in this matter, including all those who stood by and allow this injustice to take place.

Wesley M. Pollard Sr.

#

To whom it may Concern;

My Name is Gregory K. Gillette, Inmate No.# GW-4790. On July 22nd, 2017- I moved into cell No.# 146 JB Pod in the RHU At S.C.I. Benner - Township. My Neighbor Mr. Mason lived in Cell No.# 147 JB Pod. Mr. Mason had already made his cell Uninhabitable. The Sgt. Gerber And C.O.'s had to Move Mr. Mason out of the cell because he had Feces And excrement all over the Ceiling And walls. The Floors were covered with garbage, Food, trash, And clothing. The sink, The toilet, Nor the lights did Not work. Mr. Mason himself told me that the C.O.'s had written him up For trashing his cell And that Now they had to Move him because No one could live in his cell. On the days I passed his Cell on the way to Morning Recreation, it smelled so bad that it turned my stomache. Then on the morning of Aug. 11th, 2017 I over heard the Sgt. and C.O.'s out side of my cell door talking, (I did Not go out that Morning), Saying that they'll move Mr. Mason out of cell # JB 147 And put another inmate Mr. Pollard KT-7046 into cell # JB 147 As is - As A Form of punishment, For what I personally did Not Know At that time Nor did they say, but on Aug. 11th 2017 They did move Mr Mason out And put Mr. Pollard into that stinky, dirty, horrable And unlivable cell # JB 147 without cleaning Nor fixing the cell. I seen this with my own eyes, & I wanted to document it before I got out of the RHU.

I swear the above statements to be true, And Factual, No falsifications under Penalty of perjury of Penna. Law.

Signed. Truly

[signature]

Date. Aug. 15th 2017

On August 11, 2017, I Mason Swanson was moved from cell JB1047 to cell JB1055 because there was issues with the sink and light in JB1047. Specifically there was no functioning light switch, and the water faucet was missing. When I was moved to JB1055, the prisoner who had been in that cell was moved to cell JB1047. This took place before cell JB1047 had been fully repaired. While the sink was being fixed, I heard Lt. Speck say "Let's move Pollard in there, I bet he'll like that" to another CO while I was in the law library cage. At that point both of them laughed and told me that I would be moving to JB1055.

I swear this is all true and accurate to the best of my knowledge.

Written:
8-11-2017
SCI-BENNER
JB1055

Mason Swanson

Mason Swanson
"LM2494"
SCI-BENNER
301 Institution Drive
Bellefonte, PA 16823

Wesley M. Pollard Sr., KT-7046
301 Institution Drive
Bellefonte, Pennsylvania
16823

RECEIVED
SCRANTON
JUL 1 2 2018
PER ______
DEPUTY CLERK