# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESLEY M POLLARD, | : | Civil No. 3:18-CV-01381 |
| Plaintiff, | : | |
| v. | : | |
| TAMMY FERGUSON, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Presently before the court is a motion for summary judgment filed by Corrections Officer ("CO") Joshua Breeden, CO Bradley Snyder, Sgt. Jack Kuhn, Sgt. William Gerber, CO Christopher Cowfer, Timothy Graham, Tammy Ferguson, CO Matthew Gibson, CO Kyle Robison, Lt. Kevin Grassmyer, Lee Merva, Lt. Edward Speck, CO Michael Anderson, CO Bryan Smith, CO Dylan Fishbaine and CO Chris Husted ("Defendants"). (Doc. 35.) The court finds that Plaintiff Wesley Pollard ("Plaintiff" or "Pollard") has not established that the prison's administrative remedy process was unavailable to him, or that he properly exhausted Grievance 691640 prior to filing this action. For the reasons that follow, Defendants' motion for summary judgment will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.     RHU Cell JB147

At all times relevant to this lawsuit, Wesley Pollard was housed in SCI-Benner's restrictive housing unit ("RHU") due to his refusal to double cell with another inmate. (Doc. 37, ¶ 1; Doc. 1, ¶ 1.) On August 10, 2017, prison officials issued Mason Swanson, a RHU inmate housed in cell JB147, a misconduct after he broke the faucet off the sink in cell. (Doc. 37, ¶ 3; Doc. 1, p. 26.)[2] The next morning, Defendants Gerber and Speck moved inmate Swanson out of cell JB147. (Doc. 37, ¶ 6.) Swanson affirms that on August 11, 2017, "there was no functioning light switch, and the water faucet was missing" in cell JB147. Swanson also notes that another inmate was moved into his cell "before cell JB1047 had been fully repaired." (Doc. 36–1, p. 3.)

---

[1] These facts are taken from the Defendants' statement of material facts and supporting exhibits. Although Pollard filed a counterstatement of facts, it does not comply with the requirements of M.D. Pa. Local Rule 56.1 as it does not correspond to Defendants' numbered paragraphs. *Compare* Docs. 37 and 40. Nonetheless, while "conclusory, self–serving affidavits are insufficient to withstand a motion for summary judgment," an affidavit based on personal knowledge setting forth "specific facts that reveal a genuine issue of material fact" is sufficient to defeat summary judgment. *Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 161 (3d Cir. 2009)). To the extent Pollard presents such evidence, it will be considered by the court. Therefore, the following facts are undisputed, or where disputed, reflect Pollard's version of the facts pursuant to this court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019), cert. denied sub nom.; *City of Camden, New Jersey v. Forrest*, 140 S. Ct. 902, 205 L. Ed. 2d 465 (2020).

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Later that morning, Defendant Gerber informed Pollard he would be moving into cell JB147.  (Doc. 37, ¶ 7.)  Only Defendants Speck, Gerber, Gibson, and Cowfer were working in the RHU at the time of Pollard's cell move.  (Doc. 37, ¶ 8; Doc. 36–2, p. 2.)

### B. Pennsylvania Department of Corrections' Grievance Policy, DC-ADM 804

The Pennsylvania Department of Corrections ("DOC") provides prisoners with a three-step administrative remedy process that allows them to seek resolution of issues arising during their confinement called the "Inmate Grievance System, DC-ADM 804."  (Doc. 36–4, Ex. D, *Inmate Grievance System*).  Pursuant to DC-ADM 804, inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the event(s) occurred.  If dissatisfied with the initial review of the grievance, the inmate may appeal the decision to the Facility Manager or Superintendent.  Upon receiving a decision from the Superintendent, the inmate may seek final review of the grievance from the Secretary's Office of Inmate Grievances ("SOIGA").  Only issues "***raised in the initial grievance and/or*** appealed to the Facility Manager may be appealed to Final Review."  (*Id*. at §2(B)(1)(c) (emphasis in the original)).  A claim is not properly exhausted until SOIGA issues a written decision addressing the merits of the appeal.

The grievance process also allows for an inmate to withdraw a grievance at any time by contacting the institution's Facility Grievance Coordinator.  The

3

inmate must identify the grievance he seeks to withdraw, and state why he seeks to withdraw it. (*Id.*, pp. 8–9.) The Grievance Coordinator then forwards a copy of the request to the inmate's counselor who will then meet with the inmate to verify the grievance was resolved and that the withdrawal is appropriate. The inmate's counselor will sign the withdrawal form and forward it to the Grievance Coordinator. Withdrawn grievances may not be appealed to the Facility Manager or SOIGA. (*Id.*)

### C. Grievance 691640

On August 11, 2017, the day Pollard was moved into cell JB147, he filed Grievance 691640 stating "the water and lights don't work". (Doc. 37, ¶ 9; Doc. 36–3, p. 2.) He claims Defendant Gerber told CO Gibson to issue him a misconduct if he refused to move because he "did not like taking cellies." (*Id.*) Pollard claimed forcing him "to move into a cell that [prison staff] move[d] one inmate [out of] cause it wasn't liveable (sic)" violated his Eighth Amendment rights. (*Id.*) Pollard advised that he intended to file a civil action against "all those involved." (*Id.*) Prior to filing his grievance, Pollard spoke to Sgt. Gerber, and the officers working the 2–10 shift. He asserts he "tr[ied] to talk to Lt. Speck" but he was unavailable. (*Id.*)

On August 30, 2017, Lt. Speck issued Pollard an Initial Review Response denying his grievance. (Doc. 36–3, p. 3.) Defendant Speck explained that Pollard

and Swanson were both due for their "90–day move" so the officers switched inmates Swanson and Pollard's cells. (*Id.*; Doc. 37, ¶ 12.) Lt. Speck acknowledged that Pollard's "grievance does accurately depict that the inmate previously housed in JB-147 cell caused damage to the light switch, sink and toilet. However, this damage was repaired, and the water restored in a reasonable amount of time." (Doc. 36–3, p. 3.) Lt. Speck advised Pollard and RHU staff that because the cell's light switch could not be immediately repaired, Pollard was permitted to use his cell's intercom to request staff to "remotely operate [his] lights both on and off as [he] needed." (*Id.*) Lt. Speck also noted that Pollard declined "opportunities to move" to a different cell because he refused to be celled with another inmate. Due to the RHU's population at the time, and Pollard's refusal to double cell, Defendant Speck could not move Pollard to another cell other than JB147. (*Id.*) Defendant Speck noted that as of August 30, 2017, "both [Pollard's] water and lights [were] functioning properly." (*Id.*)

To substantiate Defendant Speck's findings, Defendants have submitted work order 2017–BEN–3930, which reflects that a staff plumber "replace[d] the fixture on sink" in cell JB147 August 11, 2017. (Doc. 36–5, p. 2.) Work order 2017–BEN–3958 shows that the "light button" in cell JB147 was repaired on August 31, 2017. (*Id.*, p. 3; Doc. 38, p. 26.)

Pollard appealed the Initial Review Response to the Facility Manager on September 8, 2017. (DSMF ¶ 15; Doc. 36–3, p. 4.) He argued it was improper for Lt. Speck to have investigated and responded to his grievance because Lt. Speck and Sgt. Gerber "conspired" to place him in a cell with a broken water faucet, no light switch, and "smear[ed] blood & feces on all the walls" in "retaliation" for his refusal to accept a cellmate. (Doc 36–3, p. 4.) Pollard did not claim blood and feces were in the cell, or that his water was "shut off for days" in his initial grievance. (DSMF ¶¶ 16–17; Doc. 36–3, p. 2.) As relief, Pollard "ask[ed] that this issue be, investigated again … by someone whom isn't a cooperate (sic)." (Doc. 36–3, p. 5.) He repeated his intent to file a civil suit against "all those who stood by and allow[ed] this injustice to take place." (*Id.*)

Defendant Ferguson, the Facility Manager, denied Pollard's appeal on October 4, 2017, stating that:

> In speaking with Sgt. Gerber, you and Inmate Swanson were due for a 90 day move and the logical move was to switch your cell and Inmate Swanson's cell. I have been advised that although there was damage done to the cell you were being moved into, all repairs were completed, and the water was restored with the exception of your light switch. The light switch in your cell was unable to be fixed immediately because there were no parts available. The light in your cell was able to be controlled from the unit bubble area. You were awarded the opportunity to be housed with someone else, but you refused. In speaking with Sgt. Gerber, he stated that your cell was cleaned prior to you being moved into it. Based on the information

> obtained, I do not see where any retaliation or a violation
> to your 8th Amendment right has occurred.

(Doc. 36–3, pp. 6–7.)

Pollard admits that "[o]n August 30, 2017, matter of formal/informal channels of complaint was satisfied, with water, lights and cell being clean and repaired." (Doc. 38, p. 18.) As such, "his grievance or his informal and formal complaining, either or the purpose of the exhaustion requirement had been served, with the cell being clean, lights and water in operation. The purpose of the exhaustion requirement had been served and therefore Plaintiff had exhausted." (Doc. 46, pp. 5–6.) Pollard did not appeal grievance 691640 to Final Review. (DSMF ¶ 19.)

Presently before the court is Defendants' fully briefed motion for summary judgment. (Docs. 35–37.) Plaintiff has filed an opposition brief and a statement of material facts. (Docs. 38, 40.) The Defendants filed a reply in support of their motion. (Doc. 39.) At the court's request, the parties submitted supplemental filings limited to Pollard's exhaustion of his available administrative remedies. (Docs. 45–46.) The motion is now ripe for disposition.

## JURISDICTION

This court has jurisdiction over Pollard's 42 U.S.C. 1983 action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment.  Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same.  *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## DISCUSSION

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "mandates that an inmate exhaust such administrative remedies as are available before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–1855 (2016) (quotation omitted). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[U]nexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Defendants claim, *inter alia*, they are entitled to summary judgment because Pollard did not fully exhaust his available administrative remedies available as to Grievance 691640 prior to filing this lawsuit. (Doc. 36.) Pollard does not dispute that that he did not grievance 691640 to Final Review. (Doc. 37, ¶ 19.) Instead, Pollard, relying on *Dixon v. Goord*, 224 F.Supp.2d 739 (S.D. NY 2002),[3] and similar cases, argues that because he obtained a favorable resolution to his grievance on August 30, 2017, he was not obligated to pursue his grievance to the

---

[3] In *Dixon*, the district court held that once an inmate obtained a favorable resolution of his grievance, and there was no possibility of further relief, then administrative remedies were not available relieving the inmate of satisfying the exhaustion requirement. However, as discussed infra, unlike the situation in *Dixon*, prison officials never found in Pollard's favor at any level of their review of Grievance 691640. Moreover, following *Dixon*, the Supreme Court held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross*, 136 S. Ct. at 1862.

third and final step of the grievance process.  He argues that the PLRA's exhaustion requirement was satisfied because no further relief was available to him via the DOC's grievance system.  The court does not agree.

Failure to exhaust is an affirmative defense that must be pleaded and proven by the defendants.  *Jones*, 549 U.S. at 212; *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Once defendants present evidence of a prisoner's failure to exhaust, the burden of proof shifts to the inmate to show that exhaustion occurred or that administrative remedies were unavailable.  *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).  "Both the [United States] Supreme Court and [the Third Circuit Court of Appeals] have rejected judge-made exceptions to the PLRA." *Downey*, 968 F.3d at 305.  District courts may not "excuse [a prisoner's] failure to exhaust." *Ross*, 136 S. Ct. at 1856 (rejecting a "special circumstance" exception). Likewise, district courts do not have the authority "to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhius v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

The PLRA's mandatory exhaustion requirement is not fulfilled unless the inmate properly complies with all of the agency's deadlines and other procedural rules pertaining to its administrative remedy process.  *Jones*, 549 U.S. at 218; *see also Downey*, 968 F.3d at 305.  It is the "'prison['s] grievance procedures [that] supply the yardstick' for determining what steps are required for exhaustion."

*Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 230 (2004)).  An inmate's failure to comply with the procedural requirements of the prison's grievance system will result in the procedural default of the claim.  *Spruill*, 372 F.3d at 227–32; *see also Williams*, 482 F.3d at 639 (inmate "procedurally defaulted" claim when he failed to comply with the requirements of the prison's grievance procedures).  If the court concludes the plaintiff has failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a).  *Jones*, 549 U.S. at 223–34.

  The purpose of the PLRA exhaustion requirement "was intended to return control of the inmate grievance process to prison administrators; to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."  *Hardy v. Shaikh*, 959 F.3d 578, 586 (3d Cir. 2020) (internal quotation marks omitted) (citing *Spruill*, 372 F.3d at 230).  "But [these] benefits cannot be realized unless the grievance process to be exhausted is actually available to inmates and faithfully followed by the prisons" and inmates alike.  *Id*.  Thus, the PLRA only requires a prisoner exhaust those administrative remedies that are "available."  42 U.S.C. § 1997e(a); *Ross*, 136 S.Ct. at 1855.

Where "an administrative remedy, although officially on the books," is "not capable of use to obtain relief," it is unavailable. *Rinaldi*, 904 F.3d at 266–67. The Supreme Court has identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative remedy procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross,* 136 S.Ct. at 1858. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Similarly, the Third Circuit Court of Appeals has found an inmate's administrative remedy "unavailable" where prison officials provide "misleading or deceptive [filing] instructions," *see Hardy*, 959 F.3d at 587, and when they fail to "timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Sup't Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (state prison's administrative remedy process which did not contemplate an appeal from a non-decision thwarted the inmate's advancement of his claim through the appeal process); *see also Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the

13

PLRA] requires strict compliance by prison officials with their own policies."). Further, where prison officials deter an inmate from pursuing an administrative remedy by making "serious threats of substantial retaliation … and bodily harm," the administrative remedy process is not "available."[4] *Rinaldi*, 904 F.3d at 267.

Applying this controlling law to the facts of this case, the court observes that the PLRA dictates that proper exhaustion, as defined by the prison's administrative remedy process, is mandatory. This court has no discretion to waive or excuse the failure to exhaust based on improper or imperfect attempts to exhaust, or for special circumstances such as Pollard's "favorable outcome" allegation. To the contrary, following *Ross*, a district court confronted with evaluating whether to excuse an inmate's failure to properly exhaust their administrative remedies is limited to considering whether those remedies were indeed "available" to a prisoner. *Ross*, 136 S. Ct. at 1856–57. Moreover, the Third Circuit Court of Appeals has instructed that courts may not consider the adequacy or futility of the administrative remedies to excuse proper exhaustion:

> [The Third Circuit Court] has repeatedly held that Section 1997e(a) makes exhaustion of prison administrative remedies mandatory, regardless of the efficacy of the

---

[4] A prison official's serious threats of retaliation will make administrative remedies "unavailable" when "the threat actually did deter the plaintiff from lodging a grievance or pursuing a particular part of the process" and "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Rinaldi*, 904 F.3d at 268 (quoting *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008)).

> grievance process. *See, e.g., Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (holding that "the PLRA amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory–whether or not they provide the inmate–plaintiff with the relief he says he desires"); *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000) (finding exhaustion mandatory in Eighth Amendment claim brought by prisoner under § 1983 even though plaintiff sought monetary damages), *aff'd* 532 U.S. 731, 121 S. Ct. 1819, 149 L.Ed.2d 958 (2001).

*DeHart v. Horn*, 390 F.3d 262, 273 (3d Cir. 2004).

Consequently, Pollard's belief that the further pursuit of the administrative process was futile or needless because he was satisfied with his situation as of August 30, 2017 does *not* excuse his failure to exhaust his available administrative remedies. Rather, as the foregoing discussion demonstrates, Pollard is excused from failing to appeal grievance 691640 to Final Review prior to bringing his federal claim *only* if he can demonstrate that the administrative review process was "unavailable."

Based on the record before the court, Pollard has not demonstrated that the DOC's administrative remedy process was unavailable to him after August 30, 2017. He does not suggest Defendants interfered with his ability to complete all three tiers of the DOC's administrative remedy process; instead, he admits to terminating his grievance efforts because he believed he obtained a favorable outcome with respect to the water, lights, and cleanliness of his cell. Based on the evidence presented, the court finds that prison officials never upheld his initial

15

grievance, or found in his favor at the first level of appeal. Additionally, on September 8, 2017, Pollard appealed Lt. Speck's response to the Facility Manager. (Doc. 36–3, pp. 4–5.) Pollard's submission of a grievance appeal to the Facility Manager on September 8, 2017 clearly demonstrates the "availability" of administrative remedies and defeats Pollard's exhaustion arguments.

## CONCLUSION

Based on the undisputed facts of the record, the court concludes that Pollard has not established that that he properly completed all three steps of the DOC's grievance process or that the DOC's administrative remedy process was unavailable to him, and thus, Defendants are entitled to summary judgment as a matter of law.[5] An appropriate order will issue.

s/ Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: February 22, 2021

---

[5] The court will not address the remaining issues raised by Defendants since the issue of exhaustion of administrative remedies is case dispositive.